UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MICHAEL LYNN HOLMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00487-JMS-MJD |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**Order Denying Cross-Motions for Summary Judgment**

Michael Holmes was assaulted by his cellmate in the Special Housing Unit (SHU) at the United States Penitentiary in Terre Haute, Indiana (USP-TH). He brings this action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, alleging that prison officials were negligent in failing to prevent the assault.[1] Holmes and the United States seek summary judgment. For the reasons that follow, the motions for summary judgment are denied.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.

---

[1] Holmes also brought constitutional claims against individual correctional officers at FCI-TH, but those claims were dismissed for Holmes's failure to exhaust his available administrative remedies. Dkt. 77.

Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 572-73 (7th Cir. 2017). Any

doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II. Facts

The following statement of facts has been evaluated pursuant to the standards set forth above. The facts are considered to be undisputed except where disputes are noted.

### A. The Assault on Holmes

When correctional officers assigned Offender Spratley to Holmes's cell in July 2017, Spratley had a reputation for assaulting other inmates and possessing dangerous weapons. Dkt. 109-2 p. 3, 4, 6, 7, 8; dkt. 108-1 *Id.* p. 27, Holmes Dep. at 26:19-25. Holmes objected to sharing a cell with Spratley. He explains: "I told Mr. Tindall and Mr. Porter that I wasn't trying to take that dude back in my cell because whatever he is going through has nothing to do with me…." Dkt. 108-1 p. 27, Holmes Dep. at 26:20-23. He further states:

> I told them, man, I don't want that dude in my cell. You all know how he is. You all know how I am. I don't have time with that foolishness. Find somebody else to put him in the cell with. You know. Like this dude got so many issues, he shouldn't even [have] a cellie.
>
> You know, every time you turn around, [he's] getting caught with knives in his shoe, he's stabbing guys in the rec cage, he's jumping on guys with their handcuffs on, so I was trying not to be one of his victims….

*Id.* p. 28, Holmes Dep. at 10-20.

On July 14, 2017, Holmes identified a change in the tenor of his relationship with Spratley. *Id.* p. 43-44, Holmes Dep., at 42:24-43:4. After spending the next day in silence, Spratley suddenly jumped on Holmes's bed at dinnertime and started stabbing him with two shanks. *Id.* p. 44, Holmes Dep. at 43:5-22. During that altercation, Holmes wrested one of those weapons – an ice pick – from Spratley and began stabbing him with it. *Id.* p. 165-67, Holmes Dep. at 164:19-166:7. Both inmates were ultimately disciplined for their involvement in the altercation. Dkt. 109, ¶¶ 6-7.

3

Before the assault, Holmes and Spratley were not separatees, nor had Holmes ever requested protective custody from Spratley. *Id*., p. 65, Holmes Dep. at 64:20-65:2.

Holmes alleges that Spratley had the weapons in his possession when he moved into their shared cell. Holmes has no specific evidence other than his own inference to support this allegation. *Id*. p. 99-100, Holmes Dep. at 98:25-99:4. Holmes does not actually know where or when Spratley obtained those weapons – the first time he saw them was when Spratley attacked him, approximately six days after Spratley was placed in their shared cell. *Id*., p. 99, Holmes Dep. at 98:13-24; *see also id.* p. 52, 53, Holmes Dep. at 51:15-20, 52:12-15. In addition, Holmes does not know whether, how, or by whom—if anyone—Spratley was searched or scanned before he was placed into their shared cell. *Id*., p. 75-78, Holmes Dep. at 74:24-75:3; 75:9-18; 76:19-77:2. He further admits that Spratley could have concealed a weapon before entering the cell such that even a thorough search would not have identified it. *Id*., p. 79-80, 83-84, Holmes Dep. at 78:21-79:1; 82:24-83:5.

### B. The BOP's Safety Measures to Prevent Contraband

The United States Bureau of Prisons (BOP) undertakes efforts to prevent the trafficking of contraband at the USP-TH. Dkt. 109, ¶ 13. These efforts include pat searches of inmates upon exiting or entering their cells; a visual search and screening with a hand-held metal detector of any inmate being admitted to the SHU as a new commitment, on return from call out, for a visit, or for any other reason; a pat search and scan of any inmate going to or returning from recreation; visual search and scanning of inmate work crews entering the SHU; scanning of all laundry and supplies before their entry into the SHU; and hand-search of laundry and supplies once they enter the SHU. *Id*. BOP officers in the SHU are also authorized, in their discretion, to write incident reports for inmates making "fish lines" or using other methods to pass materials from cell to cell. *Id*. In

addition, the BOP, through its Disciplinary Hearing Office, routinely investigates incidents where weapons are found in inmates' possession and imposes discipline for such offenses. *Id*. No evidence documents what, if any, safety measures were taken before Spratley was placed in Holmes's cell or during the time that the two shared a cell.

### III. The United States' Motion for Summary Judgment

The United States argues that it is entitled to summary judgment on Holmes's claims because the claims are barred by the discretionary function exception to the FTCA. The United States also argues that there is no evidence of negligence.

#### A. Discretionary Function Exception

Through the FTCA, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees in certain circumstances, subject to various exceptions. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008). One such exception is the discretionary function exception, which maintains sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the party of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *See* 28 U.S.C. § 2680(a). The discretionary function exception is an affirmative defense to liability under the FTCA that the government must plead and prove. *Keller v. United States*, 771 F.3d 1021, 1023 (7th Cir. 2014) (citing *Parrott v. United States,* 536 F.3d 629, 634–35 (7th Cir. 2008); *Reynolds v. United States,* 549 F.3d 1108, 1112 (7th Cir. 2008); *Stewart v. United States,* 199 F.2d 517, 520 (7th Cir. 1952); *S.R.P. ex rel. Abunabba v. United States,* 676 F.3d 329, 333 n. 2 (3d Cir. 2012) (collecting cases from other circuits)). To support summary judgment under the exception, the government must offer evidence that shows beyond reasonable dispute that its conduct was shielded by the exception. *Id.*

The discretionary function exception has two elements. *Calderon v. United States*, 123 F.3d 947, 949 (7th Cir. 1997). "First, a discretionary act must be involved. In other words, the act for which liability is sought to be imposed must involve 'an element of judgment or choice.'" *Id.* (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). Second, "'even assuming the challenged conduct involves an element of judgment, it remains to be decided whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Id.* (quoting *Gaubert*, 499 U.S. at 322). "[T]he exception protects only governmental actions and decisions based on considerations of public policy." *Id.*

The United States argues that the discretionary function exception shields it from liability on Holmes's allegations that: (1) Spratley should not have been placed in his cell; (2) officers failed to properly scan Spratley before his placement; and (3) officers failed to sufficiently prevent weapons trafficking generally.

### 1. Spratley's Placement

The United States first argues that Spratley's housing and designation are subject to the discretionary function exception.

#### a. Discretionary Act

With respect to the first element of the discretionary function exception, the United States points to the BOP's statutory authority under 18 U.S.C. § 4081 to classify prisoners. Section 4081 provides that prisoners should be classified: "according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to [correctional] institutions." While several polices and regulations govern placement of inmates,

Holmes has not directed the Court to any mandatory polices. The United States thus has shown that deciding where to house Spratley was a discretionary act.

### b. Exercise of Discretion

The United States, however, has not shown the second element of the discretionary function exception. The United States relies in part on *Calderon v. United States*, 123 F.3d 947 (7th Cir. 1997). In that case, Faustino Calderon reported to BOP personnel that another inmate had threatened him. *Id.* at 948. Prison personnel took no steps to protect him, and the other inmate later assaulted him. *Id.* Calderon sued under the FTCA, and the United States moved to dismiss Calderon's complaint based on the discretionary function exception. The district court granted the motion to dismiss, and the Seventh Circuit affirmed. The court reasoned that because there was no mandatory, non-discretionary disciplinary action that prison personnel were required to take against the inmate who threatened Calderon, any action on the part of prison personnel was purely discretionary. *Id.* at 950. The court went on to explain that Calderon did not present any facts which would support a finding that the BOP's action not to discipline the inmate who threatened him was based on grounds other than considerations of public policy. *Id.* The court stated: "It is clear that balancing the need to provide inmate security with the rights of inmates to circulate and socialize within the prison involves considerations based upon public policy." *Id.* at 951 (citing *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979)).

In *Calderon*, the Court presumed, based on the complaint and the arguments before it, that the decision not to act on the alleged threats was an exercise of judgment by the prison officials. The Seventh Circuit later clarified this holding, in another case involving injuries an inmate received at the hands of fellow prisoner, reasoning that if the record does not support a presumption that the officials exercised judgment, then the United States has not shown the applicability of the

discretionary function exception. *Palay v. United States*, 349 F.3d 418, 432 (7th Cir. 2003).[2] The

Court explained:

> Unstated but implicit in *Calderon* is the assumption that prison officials in that case
> had taken note of the threats against the plaintiff in that case and weighed the
> relevant considerations in deciding how best to act (or not) in response to those
> threats. There is no hint, for example, that prison officials simply ignored the
> reported threats, or forgot about them.

---

[2] The United States relies on *Calderon* and does not mention *Palay* or other more recent Seventh
Circuit cases discussed below that clarified the discretionary function exception. In fact, the United
States affirms in reply in support of its motion for summary judgment that "it has been unable to
identify any Seventh Circuit decision adopting" the doctrine that an "official's lazy or careless
failure to perform his or her discretionary duties" removes the action from the discretionary
exception. Dkt. 117 p. 7. But the Seventh Circuit said just that in *Keller* when it held that "lazy or
inattentive" actions are not covered by the discretionary function exception. 771 F.3d at 1025. The
Seventh Circuit provided similar instruction in *Palay*, stating that carelessness such as leaving a
prison unit unattended "to enjoy a cigarette or a snack" is not covered. 349 F.3d at 432. In addition,
the United States relies largely on out-of-circuit caselaw that is inconsistent with Seventh Circuit
law. *See, e.g.*, dkt. 110 p. 19-20.

This is not an isolated incident. The United States has supported a discretionary function defense
with the same sources in other cases in this Court, and the Court has made clear that *Calderon*
does not control. *See Pronin v. United States*, 2:15-cv-183-JMS-DLP, dkt. 106 p. 9-10.

An attorney who files a brief in federal court certifies that his legal contentions "are warranted by
existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or
for establishing new law. Fed. R. Civ. P. 11(b)(2). An attorney who practices in this Circuit "will
not knowingly misrepresent" or "mischaracterize . . . authorities in any oral or written
communication to the court." *Standards for Prof'l Conduct Within the Seventh Judicial Circuit*,
avail. at http://www.ca7.uscourts.gov/rules-procedures/rules/rules.htm#standards (last visited
May 25, 2021). An attorney who practices in Indiana "shall not knowingly make a false statement
of . . . law to a tribunal" or "fail to disclose to the tribunal legal authority in the controlling
jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed
by opposing counsel." Ind. R. Prof'l Conduct § 3.3(a)(1)–2).

The United States' repeated reliance on *Calderon* to support its claim that it is entitled to protection
from the discretionary function exception, without also addressing the requirement from
subsequent, controlling law that it actually exercise that discretion, may well breach these
obligations. A repeat of this argument before the undersigned in the future will result in summary
denial of any motion raising it.

The Court also held: "Although *Calderon* makes clear that prison officials enjoy discretion in matters of inmate safety, we do not know at this juncture whether the actions (or inaction) leading up to the altercation in which [the inmate] was injured involved judgment." *Id.* at 431; *see also Keller*, 771 F.3d at 1024 ("[I]f prison officials behaved negligently without making a discretionary judgment of the type shielded by the exception, the discretionary function exception would not apply to their conduct.").

Thus, as explained in *Palay*, the discretionary function exception requires not only a finding that there is no mandatory policy on the alleged conduct, but also a conclusion that the officials actually exercised some discretion. *See Palay*, 349 F.3d at 432. As that court explained, in *Calderon* there was "no hint . . . that prison officials simply ignored the reported threats, or forgot about them." *Id.* Here, there is such a hint. Holmes testified that he asked not to be placed with Spratley and that Spratley was known to attack other inmates when they were cuffed and to traffic weapons. There is no evidence as to whether any correctional official exercised any judgment in placing Spratley or in response to Holmes's objections. Without such evidence the United States has not met its burden to support the affirmative defense. *Cf. Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (applying discretionary function exception to negligence complaint where the record reflected that officials had considered security, cost, overcrowding, medical care, and the suitability of each facility to meet the needs of the prisoner when placing an inmate). Although it is possible that this decision was the result of permissible policy judgments, it also is possible that the prison officials simply ignored Holmes's objections and the risk that Sprately posed without weighing relevant policy considerations. The United States therefore has not shown that the discretionary function exception applies to Holmes's claim that Sprately was improperly placed with him over his objections.

## 2. Scanning Spratley for Weapons

The United States also argues that the discretionary function applies to Holmes's allegation that correctional officers acted negligently by failing to properly scan Spratley for weapons when placing him with Holmes.

The United States argues that 18 U.S.C. § 4042, which provides that the BOP must "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States," is not mandatory, but discretionary.

Again, by showing that the policies regarding inmate supervision are not mandatory, the United States has shown the first element of the discretionary function exception, but the United States has again not shown second element. In *Palay*, discussed above, which involved a claim of negligent inmate supervision, the Seventh Circuit identified situations in which this second element may not be met:

> Perhaps the corrections officer monitoring the holdover unit at the time that the gang altercation broke out was simply asleep, for example. Or perhaps he left the unit unattended in order to enjoy a cigarette or a snack. That type of carelessness would not be covered by the discretionary function exception, as it involves no element of choice or judgment grounded in public policy considerations.

*Palay*, 349 F.3d at 432. Here, there is no evidence regarding what steps correctional officials took, if any, to scan Spratley for weapons before placing him with Holmes. There is therefore no evidence that they exercised discretion and were not simply careless in doing so. The United States thus has not shown that the discretionary function exception applies to Holmes's claim that correctional officers were negligent in failing to ensure Spratley did not have weapons before placing him with Holmes.

### 3. The BOP's Overall Efforts to Prevent Weapons Trafficking

The United States also argues that the discretionary function exception applies to any claim that correctional officials at the USP Terre Haute were negligent in failing to prevent weapons trafficking in the SHU. Again, as with the allegations discussed above, the United States has not provided evidence that prison officials actually exercised any discretion in this instance to prevent Spratley from trafficking weapons and therefore has not met its burden to prove the discretionary function exception.

### B. Negligence

The United States also argues that Holmes's negligence claims fail on their merits.

Under the FTCA, a negligence claim against the United States is governed by "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Thus, because the actions Holmes complains of occurred in Indiana, Indiana law applies. *See id.* To prove negligence under Indiana law, Holmes must establish: (1) a duty owed to him by the defendant; (2) a breach of that duty by the defendant; and (3) that the breach proximately caused the plaintiff's damages. *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1123 (Ind. 2010).

The United States argues that it cannot be held liable for negligence because Spratley's attack on Holmes with contraband weapons was not foreseeable. The Indiana Supreme Court has held that foreseeability is a component of the duty and causation elements. *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E. 3d 384, 389-90 (Ind. 2016). The court explained:

> [A] court's task—in determining "duty"—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party. The jury, by contrast, considers "foreseeability" ... [in] more focused, fact-specific settings....

11

*Id.* at 391 (quoting *Strahin v. Cleavenger*, 603 S.E. 2d 197, 207 (2004)). "[T]he mere fact that a particular outcome is 'sufficiently likely' is not enough to give rise to a duty. Instead, for purposes of determining whether an act is foreseeable in the context of duty we assess 'whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it.'" *Id.* (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W. 3d 347, 366 (Tenn. 2008)).

The United States argues that the specific risk of harm to Holmes – that Spratley would sneak prohibited handmade weapons into their cell and attack him – was not known to any BOP employee before it happened. The United States asserts that while Holmes had stated an objection to sharing a cell with Spratley, his objections were not based on any particularized threat to Holmes, but because he objected to Spratley's sexual orientation and general history of unruly behavior. Because this was not foreseeable, according to the United States, it had no duty to take specific steps to protect Holmes.

But the United States misconstrues the evidence, and indeed ignores the proper standard on summary judgment, which requires the Court to construe the facts in the light most favorable to the non-movant. In fact, Holmes testified at this deposition not only that Spratley was generally unruly, but specifically that Spratley had a tendency to assault other inmates and had been caught several times with weapons. Dkt. 108-1 p. 30-31, Holmes Dep. at 29:20-30:16, p. 32, Holmes Dep. at 31:11-21, p. 41, Holmes Dep. at 40:1-8. Based on these facts a reasonable jury might find that, by placing Spratley in Holmes's cell and not actually ensuring that Spratley had no weapons, the United States breached a duty to Holmes that caused his injuries.

In short, the United States has not shown its entitlement to summary judgment on Holmes's negligence claim. A reasonable trier of fact could conclude based on the facts described above that

12

the United States breached a duty to Holmes to ensure his safety and that this breach caused his injuries.

## IV. Holmes's Motion for Summary Judgment

Holmes also moves for summary judgment on his claims. In support of his motion, he argues that the United States failed to respond properly to his discovery requests and that prison officials negligently ignored the risk that Spratley posed to him.

As discussed above, it is undisputed that Holmes asked officers not to place Spratley in his cell because Spratley had a history of violence and weapons trafficking. But Holmes has not designated evidence sufficient to show as a matter of law that prison officials acted negligently. A reasonable trier of fact thus might or might not conclude that the United States breached a duty to Holmes to ensure his safety. Accordingly, Homes is not entitled to summary judgment on his claims.

## V. Conclusion

For the foregoing reasons, the United States' motion for summary judgment, dkt. [107], and Holmes's motion for summary judgment, dkt. [108], are each **denied**. This case will proceed to settlement negotiations or trial if one is necessary.

The Court *sua sponte* reconsiders Holmes's motion for assistance with recruiting counsel, dkt. [65], and now **grants** that motion. The Court will proceed to attempt to recruit counsel to represent Holmes for the remainder of this case.

Holmes's motion to amend summary judgment in which he asserts that the United States still has not provided adequate responses to his discovery motions despite the Court's ruling granting in part his motion to compel, dkt. [121], is more properly understood to be a renewed motion to compel and is **denied without prejudice**. Once counsel is recruited to represent Holmes,

the Court will entertain whether further discovery, including further interrogatory responses, is required, if recruited counsel determines it is in Holmes's best interest to pursue it. The Court notes, however, that if recruited counsel does not seek further discovery, the United States is bound by the discovery responses that have already been provided. New evidence that has not been previously disclosed will not be permitted.

**IT IS SO ORDERED.**

Date: 5/26/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

MICHAEL LYNN HOLMES
60545-004
TUCSON - USP
TUCSON U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 24550
TUCSON, AZ 85734

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov